IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

TROY DALE FRANKLIN                                                                    PLAINTIFF

v.                           Civil No. 5:19-cv-05066

SHERIFF TIM HELDER, Washington
County, Arkansas; LIEUTENANT STEVE
RIDENOURE; SERGEANT ALLEN
LUNSFORD; CORPORAL JUSTIN EDENS;
DEPUTY JOSEPH MALONE; OFFICER
LYNN WHITTLE; SERGEANT PINEDA
CARLOS; DEPUTY TARKWON ALISTER;
DEPUTY JOEL KELLER; DEPUTY CLINTON
MCCARVER; CORPORAL TOM MULVANEY; and
SERGEANT J. BYRD
                                                                                      DEFENDANTS

**OPINION AND ORDER**

This is a civil rights action filed pursuant to 28 U.S.C. § 1983. Plaintiff proceeds *pro se* and *in forma pauperis.* Plaintiff is incarcerated in the Washington County Detention Center ("WCDC").

The case is currently before the Court on the Motion to Dismiss (ECF NO. 14) filed on behalf of Sheriff Tim Helder, Corporal Tom Mulvaney, and Sergeant J. Byrd. Plaintiff has responded (ECF No. 20). The Motion is ready for decision.

**I. BACKGROUND**

According to the allegations of the Complaint (ECF No. 1) and Supplement (ECF No. 10), on March 11, 2019, a "brawl" or riot broke out in Q-pod. More than 10 individuals were involved in the brawl and it continued uninterrupted for approximately 22 minutes. During the brawl, two ethnic groups were chasing each other around "stab[b]ing and striking" each other.

1

Plaintiff alleges he ran from one end of the pod to another in an effort to avoid those fighting. After the "fight finally played out," Deputy Justin Edens came into the pod and saw the blood on various inmates and called to Q-pod control, Deputy Joseph Malone, to review the footage. Despite the use of weapons by the inmates, no weapons were mentioned in any of the reports resulting from the incident.

Plaintiff alleges that "Sheriff Tim Helder and his underling subordinate deputies failed to do what the County and our tax paying doll[a]rs pay them to do, which is provide us a safe environment and security." Plaintiff notes that two of the individuals involved in the brawl were put back in Q-pod a few days later. Finally, Plaintiff notes that Sheriff Helder is charged with hiring responsible deputies who will do their jobs but has failed to do so.

His second claim is that Sergeant Pineda, Sergeant Byrd, and Corporal Mulvaney have: engaged in evasive tactics on the requests he has written; not allowed him to exhaust the grievance process; and, refuse to provide him with grievance numbers.

Since the March 11 incident, Plaintiff states he has been suffering from "severe mental issues." When people walk up next to him, Plaintiff believes he is going to be attacked. He also states he has "pictures in his head," severe anxiety, sleeplessness, and social anxiety when he is in front of ethnic groups.

## II. LEGAL STANDARD

Rule 8(a) contains the general pleading rules and requires a complaint to present "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "In order to meet this standard and survive a motion to dismiss under Rule 12(b)(6), 'a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is

plausible on its face.'" *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. While the Court will liberally construe a *pro se* plaintiff's complaint, the plaintiff must allege sufficient facts to support his claims. *See Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).

### III. DISCUSSION

In his Response (ECF No. 20) to the Motion to Dismiss, Plaintiff indicates he has no objection to dismissing claim two and Defendants Corporal Mulvaney and Sergeant Byrd. Accordingly, the only issue before the Court for decision is whether Plaintiff has stated a plausible claim against Sheriff Helder.

Individual liability under § 1983 must be based on personal involvement. *Ashcroft v. Iqbal*, 556 U.S. at 676. "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability of the supervisory defendant, [Plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights." *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007) (*quoting Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006)). A defendant in a § 1983 suit cannot be held vicariously liable for the acts of another. *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010). In other words, Sheriff Helder may not be held liable solely on the basis of conduct of one or more of his "underlings." Here, there is nothing to suggest Sheriff Helder was in the detention center at the time of the incident or gave any direct orders to the other named Defendants with respect to the alleged riot.

3

However, Sheriff Helder may still be subject to liability in his supervisory capacity if his own failure to supervise or train his deputies resulted in the alleged constitutional violation. *Audio Odyssey, Ltd. v. Brenton First Nat'l Bank*, 245 F.3d 721, 742 (8th Cir. 2001). In *Parrish*, the Eighth Circuit set forth the requirements for liability for failure to supervise. 594 F.3d at 1002. Under *Parrish*, in order for Plaintiff to establish Sheriff Helder's liability for failure to supervise, he must show Sheriff Helder: "1) Received notice of a pattern of unconstitutional acts committed by subordinates; 2) Demonstrated deliberate indifference or tacit authorization of the offensive acts; 3) Failed to take sufficient remedial action; and 4) That such failure proximately caused injury to [Plaintiff]." *Id.* (citations omitted).

Here, the Complaint contains insufficient factual allegations to assert a plausible failure to supervise claim. The Complaint, when viewed in the light most favorable to the Plaintiff, contains "no [allegations] of previous illegalities that place Sheriff [Helder] on the requisite notice" of a pattern of unconstitutional acts committed by subordinates. *Audio*, 245 F.3d at 742. Therefore, no plausible claim is stated based on a failure to supervise theory.

A supervisor may also be held liable for a failure to train an inferior officer "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. In such a situation, a plaintiff must also prove that the alleged failure to train 'actually caused' the constitutional deprivation." *Parrish*, 594 F.3d at 1002. Here, Plaintiff's basic allegations are that Sheriff Helder's hiring practices resulted in deputies who were not trained to respond when necessary to maintain a safe environment for jail inmates. While the factual allegations are rather thin, the Court believes that, taken in the light most favorable to the Plaintiff, a plausible failure to hire qualified applicants and/or the failure to train those hired resulted in their

failure to respond quickly to the brawl/riot in Q-pod.

## IV.   CONCLUSION

For the reasons stated, the Motion to Dismiss (ECF No. 14) is **GRANTED in part and DENIED in part.**  Specifically, with the agreement of the Plaintiff, claim two, relating to the processing of grievances, is dismissed and **Corporal Tom Mulvaney and Sergeant J. Byrd are terminated as Defendants**.   The Motion (ECF No. 14) is denied as to Sheriff Tim Helder.

IT IS SO ORDERED this 26th day of July 2019.

/s/ P.K. Holmes, III
P. K. HOLMES, III
U.S. DISTRICT JUDGE